UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENNIS DEAN, *et al*,<br>     Plaintiffs, | | |
| v. | | No. 3:14-cv-0448 |
| TOWN OF HAMDEN, *et al.*,<br>     Defendants. | | |

**RULING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a case about a sports-bar-turned-concert-venue and the efforts of a town to regulate its operation through police and zoning enforcement. Plaintiffs owned a large sports bar in Hamden, Connecticut that often hosted live entertainment events. Plaintiffs complain that they were subject to unfair regulation that drove them out of business and that violated their rights under both the Equal Protection and Due Process Clauses. I conclude that plaintiffs have not established a genuine issue of fact or law to sustain their claims. Accordingly, I will grant defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff Dennis Dean owns co-plaintiff Phoenix Management Group One, LLC, a company that did business in the name of "Dean's Point After Super Sports Bar and Grille" (or "the Point After") on Dixwell Avenue in Hamden. Plaintiffs have named as defendants the Town of Hamden, the Town of Hamden Zoning Board of Appeals, Police Chief Thomas J. Wydra, and Zoning Enforcement Officer Holly Masi.

The following facts are set forth as presented by the parties but as viewed in the light most favorable to plaintiffs. The Point After opened in 2005 after receiving the proper permits and liquor license from the Town. These permits allowed plaintiffs to host various sorts of

entertainment, including live music and DJs. In 2008, again after receiving the proper building and other permits, plaintiffs expanded the bar to 8,000 square-feet of space. The Town's fire marshal approved an occupancy level of 1,200 persons based on the bar's newly expanded space.

In 2009, however, defendant Holly Masi, the Town's Zoning Enforcement Officer, learned that the Point After was hosting large events and issued a notice of violation based on excessive occupancy. According to Masi, the capacity of the Point After was only 179 people—a numerical limit that was not based on fire safety requirements but that was based on the number of allotted parking spots under the site plan for the expanded site. Despite Masi's notice of violation, plaintiffs continued hosting large events at the Point After with attendance exceeding 179 people. *See* Doc. #28-2 at 60-61.

Under the Town of Hamden's so-called "Amusement Ordinance," plaintiffs were required to acquire a license from the Hamden Police Department for every concert or show and also to hire at the police chief's discretion a certain number of special-duty police officers to serve as security. *See* Doc. #28-2 at 55; Hamden Code of Ordinances §§ 112.01, 112.07.  From 2008 to 2011, plaintiffs applied for more than 50 licenses for entertainment events. The police chief—defendant Wydra—reviewed these applications. Whenever Wydra granted a license, the license included both the number of expected attendees and the number of off-duty police officers that plaintiffs were required to hire for security purposes.

Despite the fact that Masi (the Town's zoning enforcement officer) had issued a notice of violation citing the bar's limited parking space issues, Wydra routinely approved events with capacities well over 179 people, and plaintiffs routinely hired the requisite number of officers and also employed their own private security officers inside the bar. The special-duty police officers from the Town usually remained available outside the venue and did not enter the

building. Despite the Town-mandated security requirements, the address of the Point After was the subject of numerous police calls during this time, although mostly for minor disruptions.[1]

In January 2011, a fight broke out in the Point After that required the police to enter the building for public safety. After that incident, Wydra required plaintiffs to hire more officers. Plaintiffs claim that certain police officers threatened Dean with arrest if he continued hosting live entertainment or DJ events, but none of the officers who allegedly made these threats have been named as defendants in this case, and there is no evidence that Wydra or any other defendant in this action instigated these threats.

By February 2011, Dean noticed an increase in visits by Hamden fire officials. During a three or four week period, the Hamden fire marshal or staff visited the venue three times. After those visits, the fire marshal claimed that the occupancy of the venue needed to be reduced. Plaintiffs attempted to apply for a permit from the Town of Hamden to increase capacity by adding exits and fixing the problems the fire marshal had noted, but they were allegedly told that the permit would not be granted. Over the course of months, the occupancy of the venue was reduced from 1,200 to 540.

In March 2011, plaintiff Dean noticed that the special duty, hired police from the Town were taking a more active role in patrolling the premises. For example, they placed a police van and K-9 units outside the front entrance of the venue.

In April 2011, defendant Masi, in her capacity as the Town's zoning enforcement officer, issued to plaintiffs a cease-and-desist order.[2] The cease-and-desist order stated that plaintiff

---

[1] Plaintiffs dispute this fact, claiming that "no calls for assistance were ever made to the Hamden police" and that "[t]he only complaint made by neighbors of Dean's was an incorrect one concerning parking." Doc. #28-1 at 4-5. But defendants have submitted evidence via an exhibit of the police logs of complaint calls made to the police for the Point After. Therefore, the Court accepts that there were numerous calls made for minor incidents.

[2] The facts regarding plaintiffs' interactions with defendants Masi and the ZBA are drawn from the decisions of the Superior Court denying the Town's temporary injunction and overturning the decision of the ZBA. Doc. #28-2 at 59-72, 74-84. These decisions are available on Westlaw. *See Masi v. Phoenix Mgmt. Grp. One, LLC,*

Phoenix Management Group was operating a nightclub in violation of Hamden zoning regulation § 160, which prohibited any activity "not expressly permitted by the regulations." Doc. #28-2 at 76-78; *see also Phoenix Mgmt. Grp. One, LLC v. Zoning Bd. of Appeals of Hamden*, 2013 WL 3314000, at *1 (Conn. Super. Ct. 2013). Although Hamden's zoning regulations do not define what activity would constitute operating a nightclub, the cease-and-desist order demanded that plaintiffs cease all live entertainment with a dance floor. Plaintiffs promptly appealed the cease-and-desist order to the defendant Zoning Board of Appeals (ZBA).

The ZBA held a public hearing on the matter in June 2011. Plaintiffs' counsel at the hearing was prepared to argue that the Point After was not operating as a nightclub and was therefore not in violation of the regulations. But after the hearing was underway, the members of the ZBA shifted the discussion away from whether the Point After was technically a "nightclub"—a term that was undefined under the Town's zoning ordinance—to whether the Point After had violated restrictions on parking. Thus, in view of the limited parking allocated for the Point After under its site plan, the ZBA concluded that the venue's occupancy should be limited to a maximum of 179 persons at a time.

Plaintiffs' attorney objected that plaintiffs had not received notice of this parking issue as grounds for the cease-and-desist order. But in an effort to have "cleaner" grounds for decision, the ZBA decided to "go after the parking and the original occupancy rather than going after this nightclub." *Phoenix Mgmt. Grp. One, LLC*, 2013 WL 3314000 at *4. It also became clear that the real reason the Town was seeking regulation of this club was because of police complaints about the property. The ZBA upheld the cease-and-desist order on the ground of events that exceeded parking-related occupancy limits of 179 persons.

---

2012 WL 4377813 (Conn. Super. Ct. 2012); *Phoenix Mgmt. Grp. One, LLC v. Zoning Bd. of Appeals of Hamden*, 2013 WL 3314000 (Conn. Super. Ct. 2013).

After the June 2011 hearing, plaintiffs appealed the ZBA decision to the Connecticut Superior Court. *See* Conn. Gen. Stat. § 8-8 (authorizing judicial review of local zoning decisions). In the meantime, plaintiffs did not comply with the cease-and-desist order, and this in turn led defendant Masi in December 2011 to separately file an action in the Connecticut Superior Court for a temporary injunction to enforce the ZBA's decision.

Plaintiffs ended up winning both court actions. In August 2012, the Superior Court denied the Town's application for a temporary injunction, concluding in essence that the building's occupancy limit should not be determined by the site plan's available parking. *See* Doc. #28-2 at 69; *Masi v. Phoenix Mgmt. Grp. One, LLC,* 2012 WL 4377813, at *6 (Conn. Super. Ct. 2012). Then, nearly a year later, a different judge of the Connecticut Superior Court entered an opinion and order vacating the ZBA's order upholding the cease-and-desist order. Doc. #28-2 at 84; *Phoenix Mgmt. Grp. One, LLC*, 2013 WL 3314000 at *5. Noting that the ZBA had upheld the cease-and-desist order on grounds for which plaintiffs had not had proper notice, the court concluded that the ZBA's decision was "both unreasonable and arbitrary and, therefore, an abuse of discretion." *Ibid.*

While these cases were pending, plaintiffs continued to host events at the Point After, but attendance dwindled, starting in 2011. The Point After never recovered and went out of business. Plaintiffs now contend in this federal lawsuit that defendants violated their rights under the Equal Protection Clause and the Due Process Clause to the United States Constitution.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Plaintiffs raise two types of constitutional challenges in this lawsuit. First, plaintiffs contend that the Town and its police chief—defendant Wydra—violated their rights to equal protection by means of their unequal treatment of the Point After with respect to police enforcement and requirements for off-duty police staffing at live entertainment events. Second, plaintiffs contend that the Town, the ZBA, and Masi violated their rights to procedural due process by means of their efforts to issue and enforce the cease-and-desist order that was ultimately overturned by a Connecticut state court.[3] Each of these claims is considered in turn.

***Equal Protection***

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV. It does not outright prohibit governmental classifications but "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."

---

[3] At oral argument, plaintiffs abandoned their substantive due process claim.

6

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). The Equal Protection Clause protects the right of people to be free from "invidious discrimination at the hands of government officials," even for people who do not claim membership in a traditionally protected class of persons. *See Harlen Assocs. v. Inc. Village of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001).

Plaintiffs rely on two related theories for establishing a violation of the Equal Protection Clause. First, they contend that they were subject to so-called "class-of-one" arbitrary discrimination. Second, they contend that they were subject to selective enforcement of the law.

A class-of-one Equal Protection claim is recognized if a plaintiff "alleges that she was intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). To succeed on a class-of-one claim, a plaintiff or plaintiffs must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves," such that there may be a fair inference that "the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose . . . is all but certain." *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir. 2006).

The high degree of similarity between a plaintiff and alleged comparators must be so strong that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and also that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010). These demanding requirements for a class-of-one claim are in keeping with the highly deferential

nature of rational-basis review under the Equal Protection Clause. *See generally Gray v. Town of Easton*, -- F. Supp.3d --, 2015 WL4459864 at *3 (D. Conn. 2015).

Similarly, a claim of selective enforcement depends on the government's differential application of law to similarly situated individuals for constitutionally impermissible reasons. Individuals who claim such discrimination must show that such differential treatment was based on invidious factors (such as race or religion) or was otherwise for reasons of "malicious or bad faith intent to injure a person." *Brown v. City of Syracuse*, 673 F.3d 141, 152 (2d Cir. 2012). Again, plaintiffs must show that there is at least a high degree of similarity between comparators. *See Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013) (citing cases). As a general rule, whether comparators are similarly situated is a question of fact for the jury, but a court "can properly grant summary judgment where it is clear no reasonable jury could find the similarly situated prong met." *Harlen Assocs.*, 273 F.3d at 499 n.2.

 Here, plaintiffs claim that they were subject to bad faith discrimination by the Town and defendant Wydra with respect to police enforcement practices. Plaintiffs contend that similar business establishments like Devin's Lounge and 295 Treadwell, as well as other large entertainment sites like Quinnipiac University's TD BankNorth Stadium, were treated more favorably by defendants. Plaintiffs claim that Wydra required the Point After to hire more police officers than he required for these other establishments and that the Town of Hamden did not subject other establishments to as many inspections. *See* Doc. #1 at 5-6 .

Even accepting all of the facts in the light most favorable to plaintiffs, the evidence does not establish a genuine issue of fact that plaintiffs' alleged comparators were similarly situated as required to satisfy the demanding standards to support a class-of-one or selective enforcement Equal Protection claim. There is no information in the record such as the square footage,

capacity, or entertainment schedule that would provide any sort of basis for a reasonable jury to determine that the comparator entertainment venues were similarly situated to plaintiff. Indeed, plaintiff Dean stated in his deposition that the Point After was a "prototype" and "something that's never been seen before" and "fairly unique" as compared to other clubs in Hamden. Doc. #27-4 at 29; *see also* Doc. #27-3 at 12-13. As to the Quinnipiac stadium, a university sports arena that seats at least 3,600 spectators is not similarly situated to a venue like the Point After that has an occupancy of 1,200 at its maximum.

Nor has plaintiff adduced sufficient or admissible facts or evidence to show a triable issue of fact that the comparator clubs were in fact not treated similarly by the Town and Wydra. *See* Doc. #28-2 at 8-9 (¶ 20) (referencing but not including a list of bars with the "same acts" that did not require additional officers); *id.* at 9 (¶ 21) (relying on plaintiff's "personal observation" that Quinnipiac events drew a white crowd and required fewer officers). While plaintiff claims he called the named comparator establishments and learned that those entities did not have to acquire the same permits and hire additional officers, the content of this hearsay information is not within plaintiff's personal knowledge and is therefore inadmissible. *See* Doc. #27-2 at 29-30 (supplying plaintiff's testimony that he called other establishments and asked about permits and additional officers); Doc. #28-2 at 8-9, 45 (adducing plaintiff's testimony that comparator establishments did not have to have permits and additional officers in general and on specific occasions); *see also Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 170 (2d Cir. 2014) (*per curiam*) (noting materials submitted in opposition to a summary judgment motion "must be admissible themselves or must contain evidence that will be presented in admissible form at trial").

9

Plaintiffs bear the positive burden of showing similarity between themselves and comparators. *See Clubside*, 468 F.3d. at 159. On the basis of the present record and within the limits of what evidence is properly considered and admissible for summary judgment purposes, no reasonable jury could find that the comparator venues are highly similar to the Point After.

Moreover, even assuming that the alleged comparator establishments were similar in size and with respect to the type of events held there, and even assuming that there was a difference in treatment by the police, defendants' explanation for the disparity in police protection clearly afforded a rational basis for the Town and Wydra to act as they did. *See Ruston*, 610 F.3d at 59-60. The fact that complaints were called in to the police regarding the Point After gave the Town and Wydra a rational basis to require the hiring of more officers to protect the safety of attendees and the neighborhood. In addition, Wydra also stated in his responsive affidavit that he was not aware of similar events at the comparator venues and that those establishments did not have the same level of alleged criminal activity. Doc. #32-1 at 2; *see also 290 Farmington Ave., L.L.C. v. Town of Plainville*, 485 F. Supp. 2d 87, 92 (D. Conn. 2007) (granting summary judgment on Equal Protection claims and noting that "[t]he undisputed evidence shows a substantial distinction in maximum capacity and attendance between the Club and its purported comparators, resulting in a greater volume of recurring incidents requiring police attention than the Town's police department could handle, and thus warranting the claimed differential treatment, including the threatened nuisance abatement proceeding").

Although plaintiffs themselves do not belong to a protected class, they alleged in their complaint and in an affidavit submitted by Dean that the "vast majority" of patrons at the Point After were African American or other persons of color. Doc. #1 at 2; Doc. #28-2 at 45 (¶ 18). They have not, however, adduced evidence of any race-based animus of any of the named

defendants or evidence of the racial composition of patrons at the alleged comparator venues. Accordingly, even if I were to assume that plaintiffs have third-party standing to pursue a race-based challenge on behalf of minority patrons of the Point After, *see, e.g., Campbell v. Louisiana*, 523 U.S. 392, 397 (1998), I would conclude that such a challenge fails on the basis of a woefully underdeveloped factual record of race-based discrimination in this case.

The Court is mindful that racial discrimination can be hidden and that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence as may be available." *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264 (1977); *see also Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 786-87 (2d Cir. 2007) (discussing evidentiary standard that may suffice to sustain racial animus by municipal body). But the evidentiary development stage has passed in this case; discovery is complete, and the case is at summary judgment, without plaintiffs' having adduced evidence to show a genuine issue of fact to support a claim of race-based animus or discrimination.

### *Procedural Due Process*

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amdt. 14, § 1. The "standard analysis" for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*); *see also Fusco v. State of Conn.*, 815 F.2d 201, 205 (2d Cir. 1987) (court must determine whether there

was a property right, whether there was a deprivation of this right, and whether there was adequate process to justify deprivation of the right).

Here, plaintiffs claim that defendants Masi and the Zoning Board of Appeals violated their right to procedural due process when they imposed the cease-and-desist order without appropriate notice to plaintiffs of the basis and grounds for the order. Although I can understand why plaintiffs would complain about the irregularities of the ZBA hearing, I need not determine whether the process they received was constitutionally fair or appropriate, because I conclude that plaintiffs have not established at the outset a genuine issue of fact or law to show that the cease-and-desist order that was entered against them deprived them of a property right.[4]

To begin with, notwithstanding the issuance of the cease-and-desist order, plaintiffs continued to engage in the very activities that were proscribed by the order. As noted in one of the prior state court rulings in this case (and that plaintiffs have relied upon as an exhibit to their opposition to defendants' motion for summary judgment), "[t]he Zoning Enforcement Officer, Ms. Masi, issued a notice of violation [on] September 18, 2009, but despite this notice the defendant [Phoenix Management Group] continued to hold events exceeding the foregoing capacity" of 179 people that was cited in the notice of violation. Doc. #28-2 at 3. This continuing non-compliance, in turn, led to Masi's issuance of the cease-and-desist order in April 2011, which was upheld by the ZBA in June 2011. *Ibid.*

Plaintiffs did not thereafter comply with the cease-and-desist order. As the state court observed when it ruled in August 2012 on Masi's application for a temporary injunction to compel such compliance, "[i]t does not appear to be disputed, that despite the ZBA's decision

---

[4] Although it does not appear to me from the complaint or the briefing that plaintiffs' procedural due process claim is asserted against any of the defendants other than Masi and the ZBA, I would reach the same conclusion for the reasons discussed in this ruling as to each of the other defendants—that there is no genuine issue of fact or law to show that plaintiffs were deprived of a property right.

[upholding the cease-and-desist order], Phoenix has continued to hold events at the subject site in which the capacity exceeds 179 people." *Ibid.*; *see also* Doc. #27-4 at 34-35 (affidavit of town planner that "[a]lthough a cease and desist order was issued[,] the plaintiffs continued to operate the establishment and were not subject to any deprivation of property"). Indeed, plaintiffs' own complaint in this case alleges that they held an entertainment event in November 2011 that was attended by 300 customers. Doc. #1 at ¶ 28.

In the face of plaintiffs' continuing non-compliance, Masi applied to the state court in December 2011 for a temporary injunction, and this application was denied in August 2012. Doc. #28-2 at 59-72. Another state court judge later ruled in June 2013 to overturn the ZBA's decision that had upheld the cease-and-desist order. Doc. #28-2 at 74-84.

The short of it is that plaintiffs never complied with the cease-and-desist order. Because plaintiffs never complied or sought to comply with the cease-and-desist order, I cannot conclude that the entry of the order against them occasioned a "deprivation" of any of their property rights for purposes of the Constitution's due process clause. *See, e.g., Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 339 (D.D.C. 2005) ("the mere issuance of the [administrative] order does not create a cognizable deprivation of a significant property interest triggering the procedural due process analysis," because "[t]he ability of the [person subject to the order] . . . whether to comply with [the order] is key"), *aff'd sub nom. Gen. Elec. Co. v. Jackson*, 610 F.3d 110 (D.C. Cir. 2010).

Courts have not precisely defined what a "deprivation" is for purposes of a due process claim, but most that have considered the issue require the plaintiff to suffer some sort of loss. *See Cook v. Randolph Cty., Ga.*, 573 F.3d 1143, 1152 (11th Cir. 2009) (voter did not "suffer a deprivation" of rights when registrars attempted, but failed, to change his place of registration);

*O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005) (teacher who was forced to take paid sick leave did not suffer a deprivation "until he suffer[ed] a financial loss because of that leave's unavailability"); *Villanueva v. McInnis*, 723 F.2d 414, 419 (5th Cir. 1984) ("Implicit in a deprivation is both a defined right and a loss."). Here, plaintiffs did not stop holding large events in response to the order, and the state court denied the Town's temporary injunction enforcing the order. An unfollowed, unenforceable, and ultimately unenforced cease-and-desist order caused no loss to plaintiffs that constituted a deprivation. *Accord Guatay Christian Fellowship v. County of San Diego,* 670 F.3d 957, 984 (9th Cir. 2011).

In any event, even assuming that plaintiffs were victims at all of a deprivation, the cease-and-desist order did not deprive them of a cognizable property right. Although plaintiffs argue that they "certainly did have a property interest in their business and that business certainly was forced to close by the wrongful actions of the defendants," Doc. #28 at 8, this argument reflects a misunderstanding of how to evaluate whether a governmental action has deprived a person of a property right. Neither the general ability to do business free from regulation nor the ability to make a profit is a property right subject to protection from deprivation under the Due Process Clause. *See College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675 (1999) (noting that "business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense") (internal emphasis omitted); *see also West Farms Associates v. State Traffic Comm'n of State of Conn.*, 951 F.2d 469, 473 (2d Cir. 1991) ("It may be that the West Farms Mall will lose business if Wilmorite is permitted to build Plainville Mall," but "Connecticut has not established protection from competition as a property right"); *Tuchman v. Conn.,* 185 F. Supp.2d 169, 174 (D. Conn. 2002) (harm to general "ability to conduct business" not a deprivation of a property right). Therefore, the fact that

plaintiffs allege harm to their business from the cease-and-desist order—or, for that matter, any of the actions by any of the defendants—does not mean that they have been deprived of a property right to give rise to a due process claim.

In the context of constitutional due process challenges to governmental regulatory action, a property right must be more than a hope or expectation for favorable governmental action but a clear and mandatory entitlement. "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *see also Harrington v. County of Suffolk*, 607 F.3d 31, 34-35 (2d Cir. 2010) (same). Moreover, "[s]uch entitlements are not created by the Constitution but, '[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* at 34 (quoting *Castle Rock*, 545 U.S. at 756).

Here, it is clear that plaintiffs have not established the requisite state law basis for an entitlement to engage in the activity that was proscribed by the cease-and-desist order—that is, to host live entertainment events involving attendance of more than 179 persons. The Town's zoning laws did not grace them with an unfettered right to host live entertainment events of any size but conditioned their right to host such events by means of an application for a license to the Town's police chief in accordance with standards set forth in the Town's amusement ordinance.

The ordinance conditions the grant of a license on a discretionary determination by the police chief and fire chief to "assign such constables, policemen or firemen *as they may deem*

15

*necessary* for the adequate protection of the public" at any entertainment event within the scope of the ordinance. Doc. #28-2 at 55 (§ 5). It further provides that the costs for this additional police and fire protection shall be borne by the license applicant. *Ibid.* And it provides that the fire marshal shall inspect the location for any entertainment event "and, if in his opinion, said place of public assembly or location is not adequate for the event for which the license is required," then he may file a report to this effect with the police chief. *Id.* at § 4.

As the Supreme Court has observed, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Castle Rock*, 545 U.S. at 756. Because the Town's ordinance leaves considerable discretion to the Town's police chief to approve the activities within the scope of the cease-and-desist order, plaintiffs had no property right to engage in these activities. *See Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 60 (2d Cir. 1985) ("Since plaintiffs were not entitled as a matter of right to the ZBA certificate of location approval sought by them and there is no allegation that but for the ZBA members' alleged misconduct the ZBA would have been required to award them the requested certificate, they lack any property interest protectible under the Due Process Clause."). Accordingly, plaintiffs' procedural due process claim fails for lack of a showing that they were subject to a deprivation of a property right that is subject to protection under the Due Process Clause.

## CONCLUSION

Because no genuine issue of fact or law remains to sustain plaintiffs' constitutional claims, defendants' motion for summary judgment (Doc. # 27) is GRANTED.

The Clerk is ordered to close this case.

It is so ordered.

Dated at New Haven this 18th day of February 2016.

_/s/ **Jeffrey Alker Meyer**_____

Jeffrey Alker Meyer
United States District Judge